FILED
United States Court of Appeals
Tenth Circuit

July 14, 2009

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

DALE E. MCCORMICK,

Petitioner-Appellant,

v.

PHIL KLINE, Attorney General;
DAVID MCCUNE, Warden,

Respondents-Appellees.

No. 07-3213

Appeal from the United States District Court
for the District of Kansas
(D.C. No. 06-CV-3098-SAC)

Stephen Kessler, Topeka, Kansas (Dale E. McCormick, pro se, with him on the
briefs), for Petitioner-Appellant Dale E. McCormick.

Jared Maag, Deputy Solicitor General, Topeka, Kansas, for Respondents-
Appellees Phil Kline and David McKune.

Before **MCCONNELL, EBEL** and **GORSUCH**, Circuit Judges.

**EBEL**, Circuit Judge.

Kansas prisoner Dale McCormick ("McCormick") appeals the district

court's dismissal of his pro se petition for writ of habeas corpus under 28 U.S.C.

§ 2254. The district court dismissed the petition on the ground that McCormick is

no longer in custody for the 2001 convictions he challenges, and thus that the court lacked jurisdiction to hear his claims. The district court granted McCormick a Certificate of Appealability ("COA") on the issue of whether McCormick is in custody on the 2001 convictions, and McCormick requests a COA on two additional merits issues.

Exercising appellate jurisdiction under 28 U.S.C. §§ 1291 and 2253, we AFFIRM the district court's dismissal of the petition and DENY McCormick's application for additional COAs.

## I.    Factual and procedural background

### A.    *McCormick's 2001 convictions and appeals*

On the night of January 22, 2000, a Lawrence, Kansas, police officer observed McCormick driving 45 miles per hour in a 30-mile-per-hour zone. The officer stopped McCormick and asked him for his driver's license, vehicle registration, and insurance information. When McCormick, whom the officer believed to be "exceptionally nervous" and "acting unusual during the stop," was unable to produce that documentation, the officer asked McCormick to exit the car, so that the officer could search him for weapons and identification. (2002 Kan. Ct. App. opinion at 2.) McCormick refused, telling the officer that he was a law student and reciting a Kansas Court of Appeals ("KCOA") ruling that a motorist's indication that he does not have identification does not justify a police officer's search of the motorist.

- 2 -

A back-up officer then arrived on the scene, and the officers instructed McCormick that they would arrest him if he did not exit his vehicle as ordered. When McCormick again refused to step out of the vehicle, the officers placed him under arrest and forcibly removed him, pushing him face-down on the pavement. McCormick continued to resist the officers, who eventually overpowered and handcuffed him. During a subsequent patdown, the officers discovered a baggie of marijuana in McCormick's pants pocket.

In September of 2000, McCormick was tried in Douglas County District Court on two charges: obstructing official duty in violation of Kan. Stat. Ann. § 21-3808, a misdemeanor; and unlawfully possessing or controlling marijuana in violation of Kan. Stat. Ann. § 65-4162, a felony because of McCormick's prior misdemeanor conviction for possession of marijuana. That trial ended in a mistrial when the jury could not reach a unanimous verdict. In January of 2001, at his second trial on the same charges, a Douglas County jury convicted McCormick of both misdemeanor obstruction and felony unlawful possession. McCormick represented himself at trial, with the assistance of appointed standby counsel.

McCormick was sentenced to an underlying term of eleven months in state prison on the marijuana conviction, and a concurrent underlying term of ten days in the Douglas County Jail on the obstruction conviction; the court then suspended that sentence and placed him on twelve months' probation. In

pronouncing sentence, the trial judge advised McCormick that his probation was unsupervised and that he would have "no further time to serve in custody" provided that he "abide[d] by [his] conditions of probation." (R. vol. XV at 50.) Those conditions included McCormick's "obey[ing] all laws." (Id. at 51.) The trial judge further explained to McCormick that there would be "a 12-month post release supervision period should [he] be required to serve the underlying sentence at any time." (Id. at 50.) The court then granted McCormick's request for appeal bond, staying McCormick's sentence of probation "until after the appeal is decided"; once again, the court conditioned the bond on McCormick's "not violat[ing] the law." (Id. at 53-55.)

On direct appeal, McCormick raised seventeen issues for review. The KCOA found "no merit in any of his issues" and affirmed his convictions on December 20, 2002. (2002 KCOA opinion at 2, 25.) McCormick appealed the KCOA's ruling to the Kansas Supreme Court, which denied discretionary review on March 24, 2003. The U.S. Supreme Court denied certiorari on October 6, 2003.

McCormick then pursued post-conviction relief in the state courts, filing a Motion to Set Aside Verdict pursuant to Kan. Stat. Ann. § 60-1507. The § 1507 motion made two arguments: that the trial judge failed to make a detailed inquiry into whether McCormick knowingly and intelligently waived the right to counsel when he elected to represent himself at trial, and that the State failed to disclose

material evidence to McCormick. The same judge who had presided over McCormick's trial denied the § 1507 motion on April 21, 2004,[1] explaining that McCormick had not raised the issue of knowing and intelligent waiver on direct appeal, that McCormick's decision to proceed pro se at trial was nonetheless knowing and intelligent, and that McCormick's evidentiary claim lacked merit.

McCormick raised only the knowing-and-intelligent-waiver issue on appeal of his § 1507 motion to the KCOA, which affirmed the trial court's ruling on September 2, 2005. The KCOA held that because McCormick had failed to raise that issue on direct appeal, Kansas law "precluded [him] from doing so" in a § 1507 motion. (2005 KCOA opinion at 4 (citing Bruner v. State, 277 Kan. 603, 607 (2004); 2004 Kan. Ct. R. Annot. 221).) Nonetheless, the KCOA went on to take note of the trial court's determination that McCormick had made a voluntary and intelligent decision to represent himself at trial. On December 20, 2005, the Kansas Supreme Court denied discretionary review of the KCOA's ruling.

B.    *McCormick's 2004 convictions and appeals*

On February 16, 2003, while his direct appeal in the 2001 convictions was pending, McCormick committed crimes for which a Douglas County, Kansas, jury later convicted him of aggravated kidnapping, aggravated burglary, and aggravated intimidation of a witness or victim. See State v. McCormick, 159

---

[1]Kansas law assumes that the trial judge will rule on a motion for post-conviction relief pursuant to § 60-1507. Gilkey v. State, 60 P.3d 351, 353 (Kan. Ct. App. 2003).

P.3d 194, 199-202 (Kan. Ct. App. 2007). As a result of these February 2004 convictions, McCormick was sentenced to 213 months' imprisonment. His sentence was based in part on his Kansas Criminal History Category of G, the calculation of which took into account both of McCormick's 2001 convictions. McCormick did not object to his Criminal History classification at sentencing.

During the sentencing proceeding, the court explained that McCormick's prison terms for aggravated kidnapping (195 months) and aggravated burglary (32 months) would run concurrently, while his prison term for aggravated intimidation of a witness (18 months) would run consecutively to the others. The court made no other mention of sentences to which these 2004 sentences would or could run concurrently or consecutively. The Kansas Sentencing Guidelines Journal Entry of Judgment ("Journal Entry") indicated neither that McCormick had committed the crimes "While on Probation, Parole, etc., for a Felony" or "While on Felony Bond," nor that there was any "Prior Case . . . to Which the Current Sentence is to Run Concurrent or Consecutive." (Journal Entry at 2, 3.)

On direct appeal of the 2004 convictions, McCormick raised eight issues for review. Within that direct appeal, he did not challenge (or even mention) the effect of his Criminal History Category on his sentence, nor did he argue that the Journal Entry was an erroneous record of his sentence. The KCOA affirmed his convictions on May 25, 2007, and the Kansas Supreme Court denied discretionary review on September 27, 2007. McCormick later sought post-conviction relief in

the state courts, with the Kansas Supreme Court denying relief on December 18, 2007.

McCormick next filed a § 2254 petition in federal court, alleging nine grounds upon which he was entitled to relief. As on direct appeal, McCormick challenged neither the effect of his Criminal History Category on his sentence nor the Journal Entry as an accurate record of that sentence. The district court dismissed the petition without prejudice on August 8, 2008, because its mixture of exhausted and unexhausted claims deprived the court of authority, under § 2254, to review any of those claims. See Rhines v. Weber, 544 U.S. 269, 273 (2005). We recently denied McCormick's request for a COA to challenge that dismissal. McCormick v. Six, 306 F. App'x 424, 425-26 (10th Cir. 2009) (unpublished).

McCormick is presently serving his 213-month sentence on the 2004 convictions.

C.     *The § 2254 petition at issue in this appeal*

On March 27, 2006, McCormick filed a pro se habeas petition challenging the 2001 convictions and alleging six grounds for relief. The district court ordered McCormick to show cause why the petition should not be dismissed on the ground that he was no longer in custody on the 2001 convictions. The district court also instructed McCormick that he had not yet exhausted his state remedies on several of the claims made in the habeas petition. The court warned McCormick that because it lacked authority to reach the merits of a § 2254

- 7 -

petition containing unexhausted claims, see Rhines, 544 U.S. at 273, the petition would be dismissed unless McCormick amended it to include only exhausted claims.

McCormick filed an amended § 2254 petition asserting three grounds for relief, all of which in substance challenged his 2001 convictions: (1) that Kansas's obstruction-of-duty statute, Kan. Stat. Ann. § 21-3808, was unconstitutional both facially and as applied; (2) that he was permitted to represent himself at trial despite never having given a valid waiver of his right to counsel; and (3) that the jury instructions were contrary to federal law. While the amended petition continued to list McCormick's 2001 convictions as the "judgment of conviction" under challenge, it added, in a footnote, the assertion that because those convictions had been "used to 'enhance'" the sentence in his 2004 convictions, "this petition is filed in part to attack that 'enhancement.'" (Amended § 2254 pet. (2001 convictions) at 13*.) In a separate response to the show-cause order, McCormick argued for the first time that because he had been "on 'probation'" for the 2001 convictions when he began serving the sentence on his 2004 convictions, Kansas law dictated that his 2001 sentence and 2004 sentence had to run consecutively. (Response to Show Cause Order at 4-6 (citing Kan. Stat. Ann. § 21-4608(c)).)

The district court ordered the State to respond to the amended petition, and the State moved to dismiss on the ground that McCormick was no longer in

custody, for § 2254 purposes, on the 2001 convictions under challenge.

Following expansion of the record with the Journal Entry and Criminal History

Worksheet from McCormick's 2004 sentencing, the district court concluded that

McCormick did not satisfy § 2254's in-custody requirement so as to challenge the

constitutionality of his 2001 convictions. Consequently, the court dismissed

McCormick's amended petition for lack of jurisdiction. The court subsequently

denied McCormick's Motion to Alter or Amend Judgment but granted a COA on

the issue of "whether or not petitioner met the 'in custody' requirement when he

filed this federal habeas corpus action." (Dist. ct. order, Aug. 13, 2007, at 10.)

McCormick's pro se appeal timely followed. We appointed appellate

counsel for McCormick on January 4, 2008, granting leave for appointed counsel

to file supplemental briefing on the in-custody issue and to request a COA on

other issues. Through his counsel, McCormick requested COAs on two issues

pertaining to his 2001 convictions: (1) whether he validly waived his right to

counsel before representing himself at trial; and (2) whether Kansas's obstruction-

of-duty statute, Kan. Stat. Ann. § 21-3808, is unconstitutionally overbroad.

## II.     Discussion

"The first showing a § 2254 petitioner must make is that he is 'in custody

pursuant to the judgment of a State court.'" Lackawanna County Dist. Attorney v.

Coss, 532 U.S. 394, 401 (2001) (quoting 28 U.S.C. § 2254(a)). The Supreme

Court has "interpreted the statutory language as requiring that the habeas

petitioner be 'in custody' under the conviction or sentence under attack at the time his petition is filed." Maleng v. Cook, 490 U.S. 488, 490-91 (1989). Section 2254's in-custody requirement is jurisdictional. Fleming v. Evans, 481 F.3d 1249, 1252 n.1 (10th Cir. 2007) (citing Oyler v. Allenbrand, 23 F.3d 292, 293-94 (10th Cir. 1994)).

McCormick proposes, and the district court considered and rejected, three possible ways in which, when he filed his § 2254 petition, he was in custody under the 2001 convictions that the petition attacks: (1) he argues that under Kansas law, his 2004 sentence ran consecutively to his 2001 sentence, so that pursuant to the rule of Garlotte v. Fordice, 515 U.S. 39, 40-41 (1995), he remains in custody, for § 2254 purposes, under both sentences; (2) he argues that his habeas petition may be construed as a challenge to the enhancement of his 2004 sentences based on his Criminal History Category, which included his 2001 convictions, and thus he may challenge the constitutionality of his 2001 convictions under the rule of Lackawanna, 532 U.S. at 404; and (3) he argues that his term of probation for the 2001 convictions never officially commenced nor ended, so that he remains in custody under that sentence of probation because Kansas could force him to serve it at any time.

We consider each argument in turn, reviewing de novo the district court's conclusion that it lacked jurisdiction to consider McCormick's petition. See

Crawley v. Dinwiddie, 533 F.3d 1226, 1229 (10th Cir. 2008).  We review the district court's factual findings for clear error.  Id.

A.  *Whether McCormick is in custody under Garlotte*

In Peyton v. Rowe, 391 U.S. 54, 64-65 (1968), the Supreme Court held that when a habeas petitioner is in custody under consecutive state-court sentences, reviewing courts should treat those sentences as a continuous series.  Thus, for federal habeas purposes, a prisoner serving the first of two consecutive sentences is considered in custody under the second sentence, as well.  Id.

Garlotte extended Peyton's holding to state prisoners "seek[ing] to attack a conviction that ran first in a consecutive series, a sentence already served." Garlotte, 515 U.S. at 41 (emphasis added).  Reviewing courts "do not disaggregate [the consecutive] sentences, but comprehend them as composing a continuous stream."  Id.  Provided that invalidation of the conviction underlying the already-served sentence "would advance the date of [the prisoner's] eligibility for release from present incarceration," a habeas petitioner serving the latter of two or more consecutive sentences "remains 'in custody' under all of his sentences until all are served, and . . . may attack the conviction underlying the sentence scheduled to run first in the series."  Id. at 41, 43, 47.

McCormick posits that under Kansas law, Kan. Stat. Ann. § 21-4608(c), his 2004 sentence necessarily ran consecutively to his 2001 sentence, so that he remains in custody, pursuant to Garlotte, for the purpose of challenging his 2001

convictions. For the reasons that follow, we conclude that <u>Garlotte</u> is inapplicable here.

        1.     <u>Kan. Stat. Ann. § 21-4608(c)</u>

The Kansas statute provides, in pertinent part, that "[a]ny person who is convicted and sentenced for a crime committed while on probation, . . . on parole, on conditional release or on postrelease supervision for a felony shall serve the sentence consecutively to the term or terms under which the person was on probation, . . . or on parole or conditional release." Kan. Stat. Ann. § 21-4608(c). Kansas law further provides that a convicted defendant who is released on bond "pending review of the sentence" is considered to be on "conditional release." Kan. Stat. Ann. § 21-4721(b).

The Kansas Supreme Court has interpreted § 21-4608(c) to mandate that when a defendant commits a crime while he is serving a suspended sentence for an earlier felony, his sentence for the later crime must "run consecutively with <u>the sentence imposed on the prior conviction upon revocation of suspension</u>." <u>State v. Kerley</u>, 696 P.2d 975, 977 (Kan. 1985) (citing <u>State v. Ashley</u>, 693 P.2d 1168 (Kan. 1985)) (emphasis added).[2] In other words, § 21-4608(c) requires not that

---

[2]When <u>Kerley</u> was decided, the statutory provision was numbered 21-4608(3). Section 21-4608(c) is identical to § 21-4608(3), with the exception that the renumbered statute was amended such that it was triggered if the defendant committed a crime while on "assign[ment] to a community correctional services program" or "postrelease supervision" for a prior felony, as well as if the crime were committed while the defendant was on probation, parole, or

(continued...)

- 12 -

the sentence for the later conviction be served consecutively to the term _of_ probation, parole, or conditional release, but rather that the later sentence be served consecutively to the sentence imposed or reinstated after a court has revoked probation, parole, or conditional release.[3]

### 2. Section 21-4608(c)'s application to McCormick's 2004 sentencing

As applied to McCormick's case, § 21-4608(c) thus mandated that because McCormick committed the crimes underlying his 2004 convictions during the conditional stay of his suspended sentence for his 2001 felony marijuana conviction,[4] his 2004 sentence was required to be run consecutively with "the

_____

[2](...continued)
conditional release.

[3]Revocation is not mandatory under Kansas law; instead, once a court has established that a defendant violated the conditions of a suspended sentence, it may either "'continue or revoke the . . . suspension of sentence or nonprison sanction.'" State v. Skolaut, 182 P.3d 1231, 1237 (Kan. 2008) (quoting Kan. Stat. Ann. § 22-3716(b)). If the court elects to revoke the suspension of sentence, it may then "'require the defendant to serve the sentence imposed, or any lesser sentence.'" Skolaut, 182 P.3d at 1237 (quoting Kan. Stat. Ann. § 22-3716(b)).

[4]When imposing sentence for the 2001 convictions, the trial judge suspended McCormick's underlying eleven-month prison sentence and concurrent ten-day county jail sentence, placing McCormick on probation for twelve months. She then granted appeal bond and stayed the sentence of probation "until after the appeal [was] decided," conditioning the stay on McCormick's not violating the law. (R. vol. XV at 53-55.)

McCormick's direct appeal was denied by the KCOA on December 20, 2002. The Kansas Supreme Court denied discretionary review of the KCOA's decision on March 24, 2003. Therefore, McCormick's direct appeal was still

(continued...)

sentence imposed on the prior conviction <u>upon revocation of suspension</u>," <u>Kerley</u>, 696 P.2d at 977 (emphasis added). However, McCormick has not alleged–and nothing in the record indicates–that Kansas ever actually revoked the suspension of his 2001 prison sentence for the felony marijuana conviction and imposed or reimposed upon him either his underlying prison term of eleven months or any other sentence. As a result, § 21-4608(c) did not apply to McCormick's 2004 sentencing, because there was no reimposed sentence for his 2001 conviction to which the 2004 sentence could be attached for consecutive service.

Accordingly, the Journal Entry for the 2004 convictions left blank the space in which the court records all "Prior Case(s) to Which the Current Sentence is to Run concurrent or Consecutive." (Journal Entry at 3.) While it is true that under Kansas law, "a criminal sentence is effective when pronounced from the bench, rather than when the journal entry of sentencing is filed," and that "a journal entry which imposes a sentence at variance with that pronounced from the bench is erroneous and must be corrected to reflect the actual sentence imposed," <u>State v. Scaife</u>, 186 P.3d 755, 764 (Kan. 2008) (quotation omitted), the transcript of McCormick's 2004 sentencing proceeding contains no mention of any sentence to which the 2004 sentence was to run consecutively. Both as pronounced from the

_____

[4](...continued)
pending on February 16, 2003, when he committed the crimes underlying the 2004 convictions.

bench and as recorded in the Journal Entry, McCormick's 2004 sentence thus did not run consecutively to any prior sentence.

Based on the February 16, 2003, crimes, it is certainly possible that Kansas erred by not exercising its discretion, pursuant to Kan. Stat. Ann. § 22-3716(b), to revoke McCormick's suspended sentence on the 2001 convictions and require him to serve his underlying eleven-month prison term or some other reinstated sentence. It is similarly possible that the state court erred when it did not check the appropriate boxes on the Journal Entry form to indicate that the crimes underlying McCormick's 2004 convictions were committed while he was either "on Probation, Parole, etc., for a Felony" or "on Felony Bond." (Journal Entry at 2.) Even if Kansas did commit such errors under state law, however–and even if such errors, if corrected, would have meant that § 21-4608(c) did apply to McCormick's 2004 sentencing–it is simply not our province "to reexamine state-court determinations on state-law questions," Estelle v. McGuire, 502 U.S. 62, 68 (1991). "Such an inquiry . . . is no part of a federal court's habeas review of a state conviction . . . , [because] 'federal habeas corpus relief does not lie for errors of state law.'" Id. at 67 (quoting Lewis v. Jeffers, 497 U.S. 764, 780 (1990)); see also Thomas v. Gibson, 218 F.3d 1213, 1222 (10th Cir. 2000) ("[Section] 2254 exists to correct violations of the United States Constitution, not errors of state law."); Miller v. Crouse, 346 F.2d 301, 304 (10th Cir. 1965) ("[T]he writ of habeas corpus cannot be used as a substitute for an appeal[,] and

- 15 -

alleged errors in a state court proceeding in exercise of jurisdiction over a case properly before it cannot be reviewed by federal habeas corpus unless there has been a deprivation of constitutional rights such as to render a judgment void or to amount to a denial of due process.").

McCormick did not challenge in state court his 2004 sentencing proceedings, nor the Journal Entry that recorded the outcome of those proceedings.[5]  He may not now use his § 2254 petition "as a substitute for an appeal," Miller, 346 F.2d at 304, in the Kansas courts.

We conclude that McCormick is not in custody under the rule of Garlotte.

B.      *Whether McCormick is in custody under Lackawanna*

In Lackawanna County District Attorney v. Coss, 532 U.S. at 394, the Supreme Court refined the rule of Maleng, 490 U.S. at 488.  Maleng held that a habeas petitioner does not remain in custody "under a conviction after the sentence imposed for it has fully expired, merely because" that prior conviction could be or actually was used "to enhance the sentences imposed for any subsequent crimes of which he is convicted."  Maleng, 490 U.S. at 492. However, if a petition putatively challenging an earlier conviction for which the petitioner is no longer in custody "can be read as asserting a challenge to" a later

_____

[5]If Kansas did, indeed, err by not revoking the suspension of McCormick's 2001 sentence and requiring him to serve his underlying eleven-month prison term or some other term of imprisonment, that error ultimately worked in his favor, reducing the time he would have spent in prison under consecutive sentences.

sentence on which he remains in custody, on the ground that the later sentence was "enhanced by the allegedly invalid prior conviction," the petitioner "has satisfied the 'in custody' requirement for federal habeas jurisdiction." Id. at 493-94. Maleng left undecided the question whether "the [earlier] conviction itself may be subject to challenge in the attack upon the [later] sentences which it was used to enhance." Id. at 494.

The Court answered that question in the negative in Lackawanna, holding that "once a state conviction is no longer open to direct or collateral attack in its own right," a habeas petitioner "generally may not challenge," on the ground that the expired conviction was unconstitutionally obtained, a later sentence that was enhanced by that expired conviction. Lackawanna, 532 U.S. at 403-04. The Lackawanna Court crafted an exception to this general rule, however, for "§ 2254 petitions that challenge an enhanced sentence on the basis that the prior conviction used to enhance the sentence was obtained where there was a failure to appoint counsel in violation of the Sixth Amendment, as set forth in Gideon v. Wainwright, 372 U.S. 335 (1963)." Lackawanna, 532 U.S. at 404 (additional citation omitted). A plurality of the Court went on to recognize a second exception to the general rule: cases in which a petitioner has, through no fault of his own, no means of obtaining "timely review of a constitutional claim." Id. at 405. We have recognized the plurality's second exception as good law. See Broomes v. Ashcroft, 358 F.3d 1251, 1254 (10th Cir. 2004).

- 17 -

Crucial to the <u>Lackawanna</u> exceptions is the requirement that "[a]s with any § 2254 petition," a petitioner seeking to invoke the exceptions "must satisfy the procedural prerequisites for relief[,] including, for example, exhaustion of remedies." <u>Lackawanna</u>, 532 U.S. at 404. Exhaustion is a doctrine of comity and federalism "dictat[ing] that state courts must have the first opportunity to decide a [habeas] petitioner's claims." <u>Rhines</u>, 544 U.S. at 273. "[I]t would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation . . . ." <u>Id.</u> at 274 (quotation omitted). In sum, the "substance of a habeas petitioner's federal claims must be fairly presented to the state courts before they can be raised in federal court, and petitioner bears the burden of demonstrating that he has exhausted his available state remedies." <u>Oyler</u>, 23 F.3d at 300 (citations omitted); <u>see also</u> Sup. Ct. R. 20.4(a); <u>Caver v. Straub</u>, 349 F.3d 340, 345 (6th Cir. 2003).[6]

Before we may reach the merits of McCormick's claim to the <u>Lackawanna</u> exceptions, then, there are two threshold requirements that must be met. First, we must be able to construe the petition–which lists McCormick's 2001 convictions as the judgment of conviction under attack–as a challenge to his 2004 sentence as

---

[6]Even if it were not Petitioner's burden to demonstrate exhaustion of state remedies, the district court's opinion clearly determined that state remedies were not exhausted, and we can not say that finding was clearly erroneous. (<u>See</u> dist. ct. order, July 6, 2007, at 8.)

enhanced by the 2001 convictions. Second, McCormick must demonstrate that he has "fairly presented to the state courts," Oyler, 23 F.3d at 300, that challenge to the enhancement of his 2004 sentence.

      1.    <u>Whether we may construe the petition as a challenge to the 2004 sentence as enhanced by the 2001 convictions</u>

McCormick's amended habeas petition refers to his 2004 sentence only once, in a brief footnote asserting that because the 2001 convictions were "used to 'enhance'" the 2004 sentence, "this petition is filed in part to attack that 'enhancement.'" (Amended § 2254 pet. (2001 convictions) at 13*.) While this notation is perfunctory at best, we think that, "construed with the deference to which <u>pro se</u> litigants are entitled," it may fairly be read as "asserting a challenge to the [later] sentence[], as enhanced by the allegedly invalid prior conviction," <u>Maleng</u>, 490 U.S. at 493 (citing <u>Haines v. Kerner</u>, 404 U.S. 519 (1972) (additional citation omitted)).

      2.    <u>Whether McCormick has exhausted his state remedies as to the 2004 sentence</u>

On direct appeal of his 2004 convictions, McCormick challenged "the district court's refusal to appoint substitute counsel; the admission of evidence seized in violation of the Fourth Amendment; the admission of prejudicial photographs; the denial of the defendant's request for a psychological evaluation of the victim; and the court's jury instructions on aggravated kidnapping and aggravated burglary." <u>McCormick</u>, 159 P.3d at 199. He "further contend[ed] the

prosecution prejudiced his ability to obtain a fair trial by withholding exculpatory evidence and committing multiple instances of misconduct." Id.

McCormick's appeal in the Kansas courts thus did not challenge his 2004 sentence, nor, more particularly, that sentence's enhancement by the effect of his 2001 convictions on the calculation of his Criminal History Category–a calculation to which he also did not object during the 2004 sentencing proceeding.  Neither has McCormick demonstrated any other means by which he "fairly presented to the state courts," Oyler, 23 F.3d at 300, such a challenge. Therefore, we conclude that he has not satisfied § 2254's and Lackawanna's "procedural prerequisite[] . . . [of] exhaustion of remedies," 532 U.S. at 404.

Because McCormick has not met the threshold prerequisites for a Lackawanna claim, we need not and do not reach the merits of his argument that he is in custody pursuant to one of the Lackawanna exceptions.

C.      *Whether McCormick is in custody because he has not yet served his 2001 sentence of probation*

Nothing in the record "clearly establishes "when or even if . . . McCormick's 2001 probation term commenced or terminated."  (Dist. ct. order, July 6, 2007, at 6 (footnote omitted).)  However, based on "pertinent state court records and simple logic," the district court found that McCormick's probationary period for the 2001 convictions expired no later than March 25, 2004.  (Id. at 6 & nn. 6, 7.)

The district court first found that because the stay of McCormick's sentence of probation was coextensive with his direct appeal, that stay expired no later than March 25, 2003, the day after the Kansas Supreme Court denied discretionary review of the appeal. Concluding that McCormick's twelve-month "probationary term" began to run upon expiration of the stay, the district court next found that that probationary term came to an end no later than March 25, 2004. The probationary term thus terminated several years before McCormick filed the habeas petition at issue here; and Kansas law dictates that the State may revoke a defendant's probation only during the probationary term, see Kan. Stat. Ann. § 22-3716(a); State v. Grimsley, 808 P.2d 1387, 1389-90 (Kan. Ct. App. 1991). Based on these findings and conclusions, the district court decided that McCormick's 2001 sentence was satisfied prior to his filing of this habeas action, so that he was no longer in custody under the 2001 convictions when the petition was filed. See Maleng, 490 U.S. at 490-91.

In light of Kansas law on the issue of stayed terms of probation, we agree. In State v. Baumfalk, No. 94,750, 2006 WL 2043165, at *1 (Kan. Ct. App. July 21, 2006) (unpublished), the defendant was convicted and sentenced to a six-month term of probation, but the trial judge stayed execution of the sentence until the court could rule upon any post-trial motions that might be filed. Under state law, such motions had to be filed within ten days of judgment. Id. When no motions were filed within the ten-day period, the State did not immediately

proceed to execute the sentence, but instead delayed entry of sentencing for almost a month. Id. On appeal, the KCOA held that despite the State's delay in formally executing the sentence, the defendant's period of probation commenced immediately upon expiration of the stay (i.e., when no motions were filed within the ten-day period). Id. The court explained that a "judgment in a criminal case, whether it imposes a fine, grants probation, suspends either probation or sentence, or imposes any combination of these alternatives, is effective upon its pronouncement from the bench." Id. (citing State v. Jackson, 936 P.2d 761 (Kan. 1997)). When the pronouncement from the bench is a sentence of probation that is stayed for a specific period, the probationary term thus begins to run immediately upon expiration of the stay.

Under Kansas law, the district court thus was correct in concluding that McCormick's twelve-month probationary period began to run no later than March 25, 2003, the day after the Kansas Supreme Court denied discretionary review of his direct appeal. It likewise was correct in finding that McCormick's probationary period under the 2001 convictions–and thus the period within which Kansas could have revoked his probation for those convictions–concluded no later than March 25, 2004, roughly two years before he filed his habeas petition.

Accordingly, we conclude that McCormick is not in custody pursuant to his 2001 sentence of probation.

## III.    Conclusion

Based on the foregoing, we hold that McCormick was not in custody, when he brought the instant § 2254 action, on either his 2001 convictions or his 2004 sentence as enhanced by those convictions.  As a result, the district court lacked jurisdiction to consider his petition for habeas relief.

We therefore AFFIRM the district court's orders dismissing McCormick's petition for lack of jurisdiction and denying his motion for reconsideration. Because we lack jurisdiction over McCormick's petition, his application for COA on the additional issues is DENIED as moot.